**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

PHARMACEUTICAL RESEARCH
AND MANUFACTURERS OF
AMERICA                                                              PLAINTIFF

V.                                    NO. 4:21-CV-00864-BRW

ALAN MCCLAIN, in his official capacity
as Commissioner of the Arkansas
Insurance Department, and LESLIE
RUTLEDGE, in her official capacity as
Attorney General of Arkansas                                         DEFENDANTS

COMMUNITY HEALTH CENTERS OF
ARKANSAS and PIGGOTT COMMUNITY
HOSPITAL                                                             INTERVENORS

<u>**ORDER**</u>

Pending is Community Health Centers of Arkansas and Piggott Community Hospital's

Motion to Intervene (Doc. No. 17).  Plaintiff has responded.[1]  For the reasons stated below, the

motion is GRANTED.

**I.       BACKGROUND**

The federal 340B drug program requires drug manufacturers to offer discounts on

covered outpatient drugs to statutorily defined safety-net providers, referred to as "covered

entities" as a condition of the manufacturers' drugs being reimbursed by Medicaid and Medicare

Part B.[2]  In May 2021, Act 1103 of 2021 ("Act 1103")[3] was signed into law by the Governor of

Arkansas.  It includes two provisions that require drug manufacturers to ship drugs discounted

under the federal 340B drug pricing program to pharmacies under contract with Arkansas

---

[1]Doc. No. 21.

[2]42 U.S.C. § 256b(a)(l); 42 U.S.C. § 1396r-8(a)(l).

[3]Ark. Code Ann. §§ 23-92-601-06.

safety-net providers.[4]  Community Health Centers of Arkansas, Inc.'s ("CHCA")  members are eleven Arkansas-based community health centers.  Piggott Community Hospital ("PCH")  is owned and operated by the City of Piggott, Arkansas.  PCH and CHCA ("Intervenors") contend that they are "safety-net providers" and  "represent the interests of the law's intended beneficiaries."[5]  At this point, no health care provider is a party in the case.

Plaintiff seeks an order declaring two provisions of Act 1103 that control 340B bill to/ship to arrangements for covered entities and contract pharmacies located and doing business in Arkansas unconstitutional.[6]  Intervenors assert that they participate in the 340B Program and rely on these contract pharmacy arrangements.

Intervenors argue that they are entitled to intervene by right under Rule 24(a) because they have a significant economic intereset in the continued viability of Act 1103 that could be impaired by the disposition of the litigation, and no party completely and adequately represents their interests.  Alternatively, Intervenors argue they should be allowed permissive intervention under Rule 24(b) because they have defenses that share common questions of law and fact, and their intervention will not cause undue delay or prejudice to the parties.[7]  Plaintiff responded and does not oppose the intervention.[8]  Defendants did not respond and the time to do so has passed.

---

[4]Ark. Code Ann.§ 23-92-604(c)(1)-(2).

[5]Doc. No. 18, p. 9.

[6]Ark. Code Ann.§ 23-92-604(c)(1)-(2).

[7]Doc. No. 18.

[8]Doc. No. 21.

## II.    APPLICABLE LAW

Rule 24 of the Federal Rules of Civil Procedure provides both for intervention as a matter

of right and permissive intervention. Specifically, it provides:

> (a) Intervention of Right. On timely motion, the court must permit anyone to
> intervene who:
>> (1) is given an unconditional right to intervene by a federal statute; or
>> (2) claims an interest relating to the property or transaction that is the subject
>> of the action, and is so situated that disposing of the action may as a practical
>> matter impair or impede the movant's ability to protect its interest, unless
>> existing parties adequately represent that interest.
> (b) Permissive Intervention.
>> (1) In General. On timely motion, the court may permit anyone to intervene
>> who:
>>> (A) is given a conditional right to intervene by a federal statute; or
>>> (B) has a claim or defense that shares with the main action a common
>>> question of law or fact.[9]

"Rule 24 is construed liberally, and we resolve all doubts in favor of the proposed

intervenors."[10]  However, "[t]he decision to grant or deny a motion for permissive intervention is

wholly discretionary."[11]

In the Eighth Circuit, a prospective intervenor must "establish Article III standing in

addition to the requirements of Rule 24." The requirements for Article III standing are (1) injury,

(2) causation, and (3) redressability.  First, the prospective intervenor "must clearly allege facts

showing an injury in fact, which is an injury to a legally protected interest that is 'concrete,

particularized, and either actual or imminent.'"[12]  Second, the prospective intervenor must

establish "a causal connection between the injury and the conduct complained of"; in other

---

[9]Fed. R. Civ. P. 24.

[10]*United States v. Union Elec. Co.*, 64 F.3d 1152, 1158 (8th Cir. 1995).

[11]*S.D. ex rel. Barnett v. U.S. Dept. of Interior*, 317 F.3d 783, 787 (8th Cir. 2003).

[12]*Nat'l Parks Conservation Ass'n v. U.S. Envtl. Prot. Agency*, 759 F.3d 969, 974 (8th Cir.
2014) (citations omitted).

words, the intervenor's alleged injury must be "fairly traceable to the defendant's conduct."[13] Third, the prospective intervenor must establish that "a favorable decision will likely redress the injury."[14]

## III.    DISCUSSION

### A.    Standing

 Intervenors allege that they have Article III standing because they are harmed by Plaintiff's efforts to limit distribution of 340B drugs to in-house pharmacies rather than contract pharmacies.  If Plaintiff succeeds, PCH alleges that its ability to sustain its operations and provide care to indigent patients would be harmed.  PCH obtains 340B discounts on self-administered drugs through a contract pharmacy arrangement.  PCH alleges that without access to 340B drugs through these arrangements, the savings and revenue it relies on to support uncompensated care will disappear.

Similarly, CHCA alleges its members are harmed by Plaintiff's interference with 340B bill to/ship to arrangements.  It contends Plaintiff's lawsuit endangers the ability of CHCA's members to provide discounted prescription drugs at contract pharmacies.

Plaintiff's actions and policies are traceable to lost revenues generated through contract pharmacy arrangements allegedly suffered by the Intervenors.  On this basis, Intervenors have satisfied the causation element of Article III standing to intervene.  For those same reasons, Intervenors have shown redressability because the injury it alleges would be redressed by a judicial determination in their favor.

---

[13]*Id.*

[14]*Id.*

4

Accordingly, Intervenors have sufficiently alleged all three prongs of Article III standing—injury, causation, and redressability and have Article III standing to intervene in the present case.

### B.     Factors for Intervention as a Matter of Right

Rule 24(a)(2) allows a party to timely intervene as a matter of right if: (1) the motion is timely; (2) the intervenor "claims an interest relating to the property or transaction that is the subject of the action"; (3) disposition of the action "may as a practical matter impair or impede the movant's ability to protect its interest"; and (4) the existing parties do not "adequately represent" the interest.[15]

#### 1.     Timeliness

Intervenors filed their Motion to Intervene approximately six months after Plaintiff initiated the present action.  A Final Scheduling Order has been entered in this case.  However, discovery does not close and dispositive motions are not due for another six months.  The case is set for a bench trial on January 3, 2023.  Additionally, there is little likelihood that Plaintiff or Defendants will be prejudiced by Intervenor's entrance into the litigation at this stage of the case, which is evidenced by the parties' decision not to oppose the Motion to Intervene.[16] Accordingly, the Motion to Intervene is timely.

#### 2.     Interest

A proposed intervenor must show "a recognized interest in the subject matter of the litigation."[17]  The demonstrated interest must be substantial, direct, and legally protectable.[18]

---

[15]*United States v. Union Elec. Co.*, 64 F.3d 1152, 1158–61 (8th Cir.1995).

[16]Doc. No. 21.

[17]*Med. Liab. Mut. Ins. Co. v. Alan Curtis LLC*, 485 F.3d 1006, 1008 (8th Cir. 2007).

[18]*Union Elec. Co.*, 64 F.3d at 1161.

Plaintiff seeks to void Act 1103's 340B pricing mandate provisions.  Because Intervenors have demonstrated recognizable economic interests in the present lawsuit, their alleged interests, as detailed above, are sufficiently direct, substantial, and legally protectable to allow them to intervene in the case.

### 3.    Possible Impairment

A proposed intervenor must also show that its alleged interest is one that may be impaired by the results of the litigation. For all the reasons discussed above, the present litigation has the potential to impair Intervenors' economic interests.  Accordingly, Intervenors have shown a sufficient possible impairment to its alleged interest to allow them to intervene.

### 4.    Inadequate Representation of Interest

Finally, a proposed intervenor seeking to intervene as a matter of right must show that its interest is not adequately protected by the existing parties. "This requirement is met by a minimal showing that representation 'may be' inadequate."[19]

The interest of the Intervenors in this case is obviously not alligned with the Plaintiff. Intervenors point to the facts that Defendants have stayed enforcement of part of Act 1103[20] at Plaintiff's request, allowed the stay to remain for 90 day period over Intervenors' objections, and proposed rule changes that would negatively impact Intervenors' interests regarding the 340B drug pricing program.  Defendants have a broad interest in protecting the constitutionality of duly enacted state laws and the state's ability to enforce these laws, but Intervenors have a specific economic interest regarding Act 1103.  On this basis, Intervenors have demonstrated

---

[19] *Kan. Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 60 F.3d 1304, 1308 (8th Cir. 1995).

[20] Ark. Code Ann. § 23-92-604(c).

that their interests are sufficiently disparate from the current Defendants so that their interests will not be adequately protected by the existing parties to this lawsuit.[21]

Accordingly, the Motion to Intervene in this case as of right is granted.

### C.     Permissive Intervention

I would grant the Motion to Intervene under Rule 24(b)(1)(B) as well.  The decision whether to grant a motion to intervene under Rule 24(b) is "wholly discretionary."[22]  "The principle consideration in ruling on a Rule 24(b) motion is whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights."[23]

In their Proposed Answer, Intervenors allege the common defenses and common facts with Defendants to the claims that Plaintiff raises in the Complaint. Therefore, I may allow them to intervene under Rule 24(b)(1)(B).  As discussed above, Intervenors' economic interest may be impaired if they are not allowed to intervene.  Since the parties did not oppose the Motion to Intervene, I conclude that they will not suffer prejudice if I allow Intervenors to intervene. Additionally, no deadline in the Scheduling Order has passed, so it does not appear that allowing Intervenors to intervene would unduly delay this matter.  Therefore, I would permit to intervene under a theory of permissive intervention as well.

---

[21]See *Id.* at 1308 ("[t]his requirement is met by a minimal showing that representation 'may be' inadequate").

[22]*South Dakota ex rel Barnett*, 317 F.3d at 787.

[23]*Id.*

**Conclusion**

For the reasons stated above, the Motion to Intervene (Doc. No. 17) is GRANTED.  The

Intervenors are directed to file their Answer within ten (10) days of the date of this Order.

IT IS SO ORDERED this 3rd day of May, 2022.


                                        _____BILLY ROY WILSON_____
                                        UNITED STATES DISTRICT JUDGE